UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBIE L. SILVERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:12-cv-322 |
| | ) |
| ROL-ADAM & AREK MANAGEMENT, LLC; | ) |
| RARL, LLC; | ) |
| McDONALD'S RESTAURANTS OF INDIANA, INC.; | ) |
| McDONALD'S USA, LLC; and | ) |
| OTHERS DOING BUSINESS AS McDONALD'S IN MONROE COUNTY | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff BOBBIE L. SILVERS ("Silvers"), by counsel Jeffrey S. Ankrom, and brings his complaint—alleging discrimination on the basis of sex, discrimination on the basis of disability, and unlawful retaliation—against his former employer(s): McDonald's in Monroe County, Indiana.

### I. NATURE OF THE CASE and CAUSES OF ACTION

1. Bob Silvers worked at three McDonald's restaurants in the Bloomington area (Monroe County) between November 2007 and November 2009. During this period, the restaurants were locally owned and operated.

2. Silvers was subjected to severe and pervasive sexual harassment and a hostile work environment, including unwelcome questions, unwelcome comments and taunts, and

   unwelcome touching.  When he reported the sexual harassment and hostile work environment and sought to remedy the unwelcome conduct, management retaliated against him, in violation of Title VII.

3. Silvers has a history of developmental disability and ADHD.  Some of McDonald's management subjected him to severe and pervasive harassment on the basis of this disability; Silvers was subjected to a hostile work environment, including unwelcome questions, comments, and taunts.  When Silvers objected to this behavior, management retaliated against him, in violation of the ADA.

4. Silvers' opposition to discrimination took the form of complaining repeatedly to management and, ultimately filing a charge with the EEOC (alleging discrimination on the basis of sex, discrimination on the basis of disability, and retaliation).

5. As detailed below, the employer's retaliation took the form of manager's threats of termination (for reporting discriminatory behavior to higher management and for stating an intention to make such a report); one transfer to a less desirable job site (with the effect of a demotion); actual termination; and refusal to rehire because of Silvers' having filed a charge with the EEOC.

6. Silvers brings suit on three causes of action, each brought pursuant either to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), or the Americans with Disabilities Act, as amended ("ADA").

    (a) **<u>Unlawful discrimination on the basis of sex</u>**.  42 U.S.C. § 2000e-2 (Title VII, Sect. 703), as to discrimination on the basis of sex—including sexual harassment and hostile work environment.

    (b) **<u>Unlawful discrimination on the basis of disability</u>**. 42 U.S.C. § 12112 (ADA, Sect. 102), as to discrimination on the basis of disability—including harassment and hostile work environment.

    (c) **<u>Unlawful retaliation</u>** against Plaintiff for seeking lawful remedies for sex-based discrimination and disability-based discrimination: additional harassment, disadvantageous transfer (with loss of training status), threats to terminate employment, termination, and refusal to rehire:

        (i)  42 U.S.C. § 2000e-3 (Title VII, Sect 704), as to **retaliation** for objecting to sexual harassment.

        (ii) 42 U.S.C. § 12203 (ADA, Sect. 503), as to **retaliation** for objecting to harassment on the basis of disability.

## II.  JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter, as Plaintiff alleges violation of federal statutes.

8. Jurisdiction is also appropriate because of diversity: Defendant McDonald's USA, LLC, is an Illinois company, based in Oak Brook, Illinois.

9. Venue in this Court is appropriate because most (and perhaps all) of the acts relevant to this matter took place within the Southern District of Indiana.

10. Venue in this Court is appropriate because Plaintiff is a resident of southern Indiana, and all but one Defendant is based in Monroe County or Marion County—the geographical jurisdiction of the Court.

### III. PARTIES

11. Plaintiff Bob Silvers, an adult at all times relevant to this matter, was an employee of McDonald's in Monroe County between November 2007 and November 2009.

12. All McDonald's locations in Monroe County (a total of five, including the three where Silvers worked) were run from a single office, at 857 South Auto Mall Road, Suite 7, Bloomington, IN 47401-5488. On information and belief, the total workforce for all locations exceeded five hundred (500) people.

13. On information and belief, all five of the McDonald's restaurants in Monroe County during that period were under the control of Roland Long and Rachel Long, who were associated with Defendant Rol-Adam & Arek Management, LLC ("Rol-Adam & Arek") and with Defendant RARL, LLC ("RARL"). Plaintiff does not know what the corporate structure was, whether any additional business entities were involved, or whether all assets were owned by the two LLCs.

14. On information and belief, Roland Long and Rachel Long sold their interest in the restaurants after November 2009. Plaintiff does not know whether Rol-Adam & Arek or RARL still hold any assets in these restaurants.

15. Defendant Rol-Adam & Arek is an LLC registered in Indiana and, during the events pertinent to this matter, conducted business in the Southern District of Indiana.

16. Rol-Adam & Arek was one of Plaintiff's employers at McDonald's, its name having appeared on some check stubs.

17. Defendant RARL is registered in Indiana and, during the events pertinent to this matter, conducted business in the Southern District of Indiana.

4

18. Defendant RARL, LLC, was one of Plaintiff's employers at McDonald's, its name having appears on some check stubs.

19. By the designation "Others Doing Business as McDonald's in Monroe County" Plaintiff refers to any person or entity—besides the other named defendants—who owned or controlled these McDonald's restaurants (whether in part or in the entirety) and was liable for compliance with the provisions of the ADA and of Title VII set out above.  For example, payment sometimes came from "Rol-Arek Management Co.," but Plaintiff does not know whether this is an alias of "Rol-Adam & Arek Management Co."

20. McDonald's Restaurants of Indiana, Inc., is an Indiana corporation.  It is believed to have become a part owner or a manager of the McDonald's restaurants in Monroe County after the actions complained of herein had taken place.  Plaintiff does not know how liability was distributed under any contract with other Defendants.

21. McDonald's USA, LLC, is registered in Illinois and is registered with the Indiana Secretary of State to do business in the State of Indiana.  It is believed to have become the sole owner or the part owner and/or manager of McDonald's restaurants in Monroe County after the actions complained of herein had taken place.  Plaintiff does not know how liability was distributed under any contract with other Defendants.

### IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. Plaintiff Silvers satisfied his obligation to exhaust all administrative remedies by filing a charge (no. 470-2010-00828) with the Equal Employment Opportunity Commission ("EEOC") naming "Employer doing business as McDonald's at five locations in Bloomington" as Respondent.

23. Silvers received a Notice of Right to Sue from the EEOC (**Exhibit A**).

24. Plaintiff received that Notice no earlier than December 14, 2011, and has timely filed this Complaint.

## V.  FACTUAL SUMMARY

### A.     Overview of Timeline

25. Silvers worked at the "north store" (2300 North Walnut Street, Bloomington, IN 47404) from about November 4, 2007, to about October 19, 2009, when he was transferred (against his will) to the "west store."

26. Silvers worked at the "west store" (2910 West 3rd Street [= 230 Franklin Road], Bloomington, IN 47404) from about October 19, 2009, to about November 1, 2009.  He found the harassment and hostile work environment at this location intolerable, and he requested a transfer.

27. Silvers worked at the "Ellettsville store" (at 4499 West State Highway 46, Bloomington, IN 47404) from about November 2, 2009, to about November 22, 2009, when his employment was terminated.  At the time he was fired (on November 22, 2009), his job title was Crew Chief.

### B.     North Store:  Sexual Harassment, Hostile Work Environment on the Basis of Sex, and Retaliation (November 2007 to October 2009)

28. Sexual harassment at this location came only from one Shift Manager and Store Manager. Silvers complained repeatedly about the harassment.  When Area Manager was made aware of the problem, nothing was done to stop the harassment.

29. Inappropriate sexual comments started in November 2007, when a Shift Manager began asking Silvers about sexual matters and making frequent unwelcome sexual comments to and about him. The problems continued as long as he worked there.

30. The same Shift Manager repeatedly touched or brushed against Silvers' pelvic area while making sexual comments. On another occasion, she grabbed Plaintiff's crotch and made sexual comments.

31. Plaintiff complained to a Store Manager, who told him, "If you don't like it, you can leave." She added that she would get rid of Silvers before she would get rid of the Shift Manager, "So shut up and get back to work."

32. Plaintiff complained to the Area Manager, who undertook to investigate the matter. After a week, Silvers asked the Store Manager if there were any results from the investigation. She said, "If you don't want to just go ahead and get along, I'll fire you and [Silvers' domestic partner] both, but I'm not going to get rid of a manager who's been here for 14 years for you."

33. Silvers understood her comment to be a threat of termination: retaliatory action for seeking a remedy for sexual harassment and the hostile work environment.

**C.     North Store:  Harassment on the Basis of Disability, Hostile Work Environment on the Basis of Disability (2009)**

34. At the north store, Silvers was harassed and made fun of due to his disability (ADHD). (He did not experience discrimination on the basis of disability at the west store or the Ellettsville store.)

35. At the north store, the Shift Manager and Store Manager constantly made fun of Silvers, ridiculed him because of his disability. The Shift Manager repeatedly told him that he would not make it as a manager. He was routinely called "stupid," "retard," "retarded," and "mentally retarded." He was asked, "Weren't you in special ed?" The Store Manager called him a "f**king idiot" where customers could hear her.

36. Silvers complained on several occasions about being called mentally retarded. The problem persisted.

37. Silvers asked the Shift Manager to help him learn a new set of skills (backline grill) as part of his management training. After starting to help him, she began yelling, told him he was asking too many questions, said he was mentally retarded, and told him that he could not pass the test to become a manager.

38. The Shift Manager and Silvers got into an argument because she called him "retarded." He reported that he going to complain to the area supervisor. The next morning, the Shift Manager retaliated by letting tea pour onto the floor, then telling Silvers, "Clean it up, f**king retard."

D. **Retaliation: Transfer from North Store to West Store (October 2009)**

39. The next day, Silvers was told that he was being transferred to the west store. The putative reason for the transfer was that his domestic partner was becoming a manager. Management claimed to be following a policy barring couples or family members from working in the same store. This was a highly selective application of the policy. (*See below.*) In light of the timing, Silvers believes that the transfer was retaliation for opposing harassing behavior.

40. After Silvers had been transferred, the Shift Manager commented to other employees about how happy she was that "that retard" was gone.

41. As a manager trainee, Silvers already had a manager's shirt and tie at the north store, although he was not yet certified to have keys. When he was transferred, he lost the benefit of his training and was told that he had to start training all over again.

### E. Employer's Claim of Enforcing Policy Is Pretext: Policy Was Routinely Ignored—Transfer Was Retaliatory (August-October 2009)

42. The policy against allowing couples to work together was routinely disregarded.

43. In or about August 2009—at the management office (857 Auto Mall Road, Suite 7, Bloomington, IN)—Silvers asked co-owner Roland Long whether a transfer would be necessary, since Silvers' partner was training to become a manager, and they both worked at the north store. Long said that no transfer would be necessary, so long as there was no favoritism, confrontation, fighting, or drama. He said that in a worst-case scenario Silvers would be put on a different shift from his partner.

44. Many other couples or family members have worked together in the store, even when one was manager. Silvers urges that the real reason for the transfer was that he had threatened to complain about the most recent harassment issues and hostile work environment concerning disability (including the Store Manager's making a mess to punish Silvers for threatening to complain).

**F.     West Store:  Sexual Harassment, Hostile Work Environment on the Basis of Sex, Retaliation, and Constructive Termination (October-November 2009)**

45.    At the west store, the head Maintenance person insulted Silvers with harsh sexual epithets. Silvers asked him to stop, to no avail.

46.    Silvers reported the problem to the Store Manager, who said, "That's how he is."  She told Silvers to deal with it, and that it was part of being a manager in training.

47.    A manager started making harassing sexual comments, taunting Silvers.  Again, Silvers went to the Store Manager, and he was told, "If you don't like it, you can leave."

48.    Silvers understood the Store Manager's response to be a retaliatory threat that he would be fired if he continued complaining about sexual harassment and hostile work environment.

49.    Silvers learned later that he had been written up for money shortages (all under $20) at the west store.  He was being held individually responsible for money shortages on the drawer, even though approximately five people were using the same cash drawer in the course of the day.  The timing points to an attempt by management to use ill-founded write-ups to justify terminating Silvers' employment—in retaliation for complaining about sexual harassment and a hostile work environment.

**G.     Transfer from West Store to Ellettsville Store: Constructive Termination (October-November 2009)**

50.    Sexual harassment and hostile work environment at the west store made working there intolerable, rising to the level of constructive termination.  Silvers asked the Area Manager for a transfer from the west store to the Ellettsville store, also pointing out that

10

he anticipated that the change of location would also make it easier for him to transport a family member to her job.

### H. Termination (November 2009)

51. At the Ellettsville store, there was no apparent discrimination on the basis of either disability or sex. It was a much better place to work.

52. However, on November 22, 2009, at the Ellettsville store, Silvers was terminated for allegedly taking a one-serving container of milk, which was part of his meal at work. Silvers and the cashier have different memories about whether Silvers asked her to ring up the milk. Nonetheless, Silvers was fired. The timing and totality of circumstances—after the ill-founded transfer to the west store, the threats, and the write-ups about shortages on shared cash drawers—point toward retaliation.

### I. Retaliation: Refusal to Hire (Rehire) for Objecting to Prior Discrimination (April 2010)

53. Silvers urges that he was retaliated against when—as a consequence of his having filed a charge with the EEOC (having to do with sex-based discrimination, disability-based discrimination, and retaliation)—McDonald's refused to hire him back.

54. There is an extensive history at the north store (and perhaps others) of rehiring employees after firing them—sometimes in a matter of minutes, sometimes after a few days, sometimes when the store is going to be particularly busy.

55. Silvers had a friend let the Store Manager know that Silvers wanted to be rehired. (He needed the income.) The Store Manager asked permission from the Area Manager, who

11

checked with co-owner Rachel Long. The reply came from the Store Manager by text message at 7:07 p.m. on April 22, 2010: "She said no. Rachel had to spend the money to hire the lawyer to fight the lawsuit so she will not allow it. Sorry[.]"

56. The "lawsuit," on information and belief, was Silvers' EEOC action. While the employer was not obliged to hire Silvers back, Plaintiff urges that the reason for refusing to rehire him—his having filed a charge with the EEOC—is unlawful.

## VII. REQUESTED RELIEF

**WHEREFORE**, Plaintiff Bobbie L. Silvers respectfully requests that this court enter judgment in his favor and award him the following relief:

1. Lost wages, benefits, compensation, and other monetary relief sufficient to make Plaintiff whole;

2. Punitive damages;

3. All costs and attorney's fees incurred as a result of bringing this action;

4. Interest on all sums recoverable, to the degree the law allows; and,

5. All other relief that is lawful and just.

Respectfully submitted,

_s/ Jeffrey S. Ankrom_____

Jeffrey S. Ankrom, Counsel for Bob Silvers
Attorney No. 24781-53
JEFFREY S. ANKROM, ATTORNEY AT LAW, LLC
701 N. Walnut St.
Bloomington, IN 47404-3848
Tel. (812) 334-9010
Fax 888-254-0062
ankrom@copyrighttimes.com